6
PILLSBURY WINTHROP SHAW PITTMAN LLP
M. DAVID MINNICK #54148
ALICE KWONG MA HAYASHI #178522
MICHAEL P. ELLIS #209343
50 Fremont Street
Post Office Box 7880
San Francisco, CA 94120-7880
Telephone: (415) 983-1000
Facsimile: (415) 983-1200
dminnick@pillsburylaw.com
alice.hayashi@pillsburylaw.com
michael.ellis@pillsburylaw.com

Attorneys for Secured Creditor
WELLS FARGO BANK, N.A.
FILED
March 10, 2009
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
0001704726

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| IN RE:<br><br>Ennis Homes, Inc.,<br><br>               Debtor | No. 09-10848-A-11<br><br>CHAPTER 11<br><br>DC No. KDG-3<br><br>**OBJECTION TO ENNIS HOME'S MOTION TO USE CASH COLLATERAL**<br><br>Date:   March 11, 2009<br>Time:  1:30 p.m.<br>Place:  United States Bankruptcy Court<br>          2500 Tulare Street, Fifth Floor<br>          Department A, Courtroom 11<br>          Fresno, California<br>Judge:  Hon. Whitney Rimel |

I.    <u>Introduction</u>

Secured creditor, Wells Fargo Bank, N.A., ("Wells Fargo") objects to the Motion to Use Cash Collateral and Grant Adequate Protection ("Motion") filed March 4, 2009 by Ennis Homes, Inc. (the "Debtor"). The Debtor has not established essential elements to

support the Debtor's use of Wells Fargo's cash collateral. Based on the Motion and its supporting papers, Wells Fargo has the following principal objections:

1. Wells Fargo cannot determine how much of the Debtor's proposed cash is cash collateral of Wells Fargo.
2. There is no indication of whether the Debtor will use any of the designated cash collateral to preserve or protect collateral of Wells Fargo or of some other creditor.
3. To the extent that Wells Fargo's cash collateral is used, the Debtor has provided no assurance that the replacement liens offered to Wells Fargo by the Debtor have any value at all. Junior liens on property that is already worth less than the amounts secured by the senior lien holders provide no adequate protection. The Debtor has provided no evidence that there is any equity value available on any of its property that would offer protection to Wells Fargo.
4. Even if there were some equity available on the property subject to the proposed junior liens, providing a junior lien on land is certainly not the indubitable equivalent of cash in a deposit account.
5. The Debtor suggests it will build out and sell additional properties to provide replacement collateral but there is no source of funds identified for such construction. There is no indication that there would be additional value beyond what is needed to pay the senior lender on the property to be constructed and sold. There is also no evidence that such construction would produce sales if the Debtor could find new funding for the construction.

II. **Wells Fargo is a secured creditor.**

The Debtor acknowledges in the Motion that Wells Fargo is a secured creditor. Debtor, Wells Fargo, and Ennis Land Development, Inc. ("Ennis Land"; formerly known as Ennis Land Development, LLC) are parties to that certain (a) Revolving Loan Agreement dated as of April 15, 2005 (as amended from time to time, the "Loan Agreement"), and (b) Interest Rate Master Agreement dated as of June 16, 2005 (the "Interest Rate Agreement" and together with the Loan Agreement, the "Wells Fargo Agreements"). The Debtor and Ennis Land are jointly and severally liable to Wells Fargo under each of the Wells Fargo Agreements. The outstanding principal balance of due on the Wells Fargo Agreements is in excess of $30 million as of the filing of the Debtor's chapter 11 case on February 2, 2009.

Debtor and Ennis Land's obligations in connection with the Loan Agreement are secured, in part, by deeds of trust granting Wells Fargo a first priority lien on the real estate development projects known as (1) Silver Oaks, Unit No. 2, in Visalia, California; (2) Parkside Village, Unit No. 1, in Dinuba, California; (3) Granite Ridge in Delano, California; (4) Vineyard Estates in Wasco, California; (5) New Expressions in Porterville, California; and (6) Willow Glen in Tulare, California (collectively, the "Projects"). Debtor and Ennis Land's obligations under the Interest Rate Agreement are secured, in part, by a deed of trust recorded against Parkside Village, Unit No. 1. The Debtor asserts an interest in only four of the 1,006 remaining and planned lots in the Projects: (1) Lot 126 in Parkside Village, (2) Lot 92 in Silver Oaks, and (3-4) Lots 11 and 12 in Vineyard Estates (collectively, the "Wells Fargo Four Lots").

Debtor and Ennis Land's Loan obligations to Wells Fargo are also secured by certain of Debtor's and Ennis Land's personal property as more specifically described in the respective Deeds of Trust recorded against each of the Projects and as perfected by the respective UCC-1 financing statements filed by Wells Fargo. Wells Fargo filed

UCC-1 financing statements with the California Secretary of State with respect to each of the Projects.

### III. The Motion fails to demonstrate the extent of the use of Wells Fargo's cash collateral, the benefit of the use of cash collateral to Wells Fargo's other collateral or the value of the replacement lien to protect Wells Fargo.

When Debtor first notified Wells Fargo of Debtor's intent to seek use of cash collateral prior to filing the Motion, Wells Fargo asked the Debtor to identify the source of the funds the Debtor wanted to use. Only in that way could Wells Fargo determine the extent of its interest in the cash collateral. Unfortunately, the Motion does not describe the source of the funds designated for the Debtor's use. The Motion only acknowledges that Wells Fargo has an interest in the cash collateral the Debtor seeks to use.

The Debtor's budget attached as part of its Motion to describe the use of the cash collateral (the "Budget"), does not specify specific properties that will benefit from the use of cash collateral. For example, the week of March 30, 2009, the Budget describes that $382,171 will be paid for property taxes. It does not identify the properties that will benefit from having their property taxes paid. Wells Fargo cannot tell if its cash collateral will be used to pay the property taxes on the real estate serving as collateral for the Debtor's obligations to Wells Fargo. Such a payment for the Wells Fargo real estate Projects taxes might well be acceptable to Wells Fargo. Payment of the taxes on other property would not be acceptable. Because the Debtor owns a total of only <u>four</u> lots which serve as collateral for Debtor's outstanding obligations to Wells Fargo, Wells Fargo is concerned the $382,171 is more likely to benefit some other creditor's property. If there were a budget of specific expenses that would benefit Wells Fargo's collateral, Wells Fargo might find that some of those expenses would be proper to pay with Wells Fargo's cash collateral.

In describing its proposed adequate protection of replacement collateral, the Debtor has lumped four creditors together and attempted, without analysis, to offer each

701467457v1 - 4 -

OBJECTION OF WELLS FARGO TO DEBTOR'S
MOTION TO USE CASH COLLATERAL

such party a "lien junior to all existing liens, on all of its real properties." Motion, at 5, ¶16. Debtor provides no evidence that there is any equity in any of the real properties it owns. As a result there is no showing of what, if any, value these junior position liens will generate. The Debtor does not even indicate how many liens would be senior to the proposed "junior liens" for Wells Fargo. If the other properties are similar to Wells Fargo's, there is no equity available. As noted above, the Debtor owns a total of four lots that serve as collateral for the Debtor's obligations to Wells Fargo. The Debtor values those lots at $925,000 in its Schedule A filed on February 13, 2009 [Doc. No. 17]. Those lots secure Debtor's outstanding (and defaulted) obligations to Wells Fargo in excess of $30,000,000. It is clear that there is no equity available for any junior lien claimants on those Wells Fargo lots.

The Debtor has provided no evidence of any other protection for Wells Fargo's position from other property of the Debtor.

IV. <u>Conclusion.</u>

The Debtor has made no showing of a basis to utilize Wells Fargo's cash collateral. More information could provide some basis for the use of cash collateral if it would be used to protect and preserve Wells Fargo's real property collateral pending Wells Fargo's foreclosure. Without such a showing the Debtor needs to demonstrate why Wells Fargo will be adequately protected if Wells Fargo's collateral is used for other purposes. No evidence of adequate protection has been provided that there exists value to replace the cash collateral the Debtor wants to use. What has been proposed does not give any comfort that it is adequate protection for the use of cash.

As a result Wells Fargo respectfully requests that the Court deny the Motion with respect to any collateral of Wells Fargo. Debtor should not be permitted to use any cash collateral attributable to Wells Fargo or impose any junior lien on the Wells Fargo collateral in favor of any other creditor.

701467457v1 - 5 -

OBJECTION OF WELLS FARGO TO DEBTOR'S
MOTION TO USE CASH COLLATERAL

| | |
|---|---|
| 1 | As reflected in the Motion, the Debtor and Wells Fargo agreed to stipulate to |
| 2 | relief from the automatic stay so that Wells Fargo could seek to exercise its state law |
| 3 | remedies to foreclose on the Wells Fargo collateral. At a minimum, Wells Fargo's cash |
| 4 | collateral and real properties should remain unaffected by the Motion pending a ruling on |
| 5 | the soon to be filed motion to approve the stipulation for Wells Fargo to obtain relief |
| 6 | from stay. |

Dated: March 10, 2009

PILLSBURY WINTHROP SHAW PITTMAN LLP
M. DAVID MINNICK
ALICE KWONG MA HAYASHI
MICHAEL P. ELLIS
50 Fremont Street
Post Office Box 7880
San Francisco, CA 94120-7880

By /s/ M. David Minnick
    Attorneys for Wells Fargo Bank, N.A.