**FILED**

December 18, 2009

CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA



0002297893

**33**

HAGOP T. BEDOYAN, CSB NO. 131285
T. SCOTT BELDEN, CSB NO. 184387
JACOB L. EATON, CSB NO. 244834
KLEIN, DENATALE, GOLDNER,
    COOPER, ROSENLIEB & KIMBALL, LLP
5260 N. Palm Avenue, Suite 217
Fresno, California 93704
Telephone: (559) 438-4374
Facsimile: (559) 432-1847

Attorneys for Debtors-in-Possession

# UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION

| | |
|---|---|
| In re:<br><br>ENNIS HOMES, INC.,<br><br>    Debtor-in-Possession. | Case No. 09-10848-A-11<br>*Jointly administered with case no.*<br>*09-16750-A-11*<br><br>Chapter 11<br><br>DC No.   KDG-29 |
| In re:<br><br>ENNIS LAND DEVELOPMENT, INC.,<br><br>    Debtor in Possession. | Date:   January 13, 2010<br>Time:   1:30 p.m.<br>Place:   U.S. Bankruptcy Court<br>         2500 Tulare Street, Fifth Floor<br>         Department A, Courtroom 11<br>         Fresno, California<br>Judge:   Honorable Whitney Rimel |

## JOINT PLAN OF REORGANIZATION

### Introduction

Pursuant to Section 1121(a)[1] of the Code,[2] Ennis Homes, Inc. and Ennis Land Development, Inc. (individually as "Ennis Homes" and "Ennis Land Development" and collectively as "Debtors") respectfully propose the following Joint Plan of Reorganization ("the Plan"). Debtors are the proponents of the Plan under Section 1129.

The Plan contemplates the reorganization and substantive consolidation of Debtors and the resolution of all outstanding Claims against and interests in Debtors. If any Impaired Class of Claims against Debtors entitled to vote on the Plan does not accept the Plan by the requisite

---

1 All section numbers refer to the sections of Title 11 of the United States Code unless otherwise indicated.
2 Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in Section 15.01 of this Plan.

statutory majority required by Section 1126(c), then Debtors will proceed to confirm the Plan under Section 1129(b).

Votes to accept or reject a plan of reorganization cannot be solicited from holders of Claims or Interests entitled to vote on the plan until a disclosure statement has been approved by a Bankruptcy Court and distributed to such holders under Section 1125(b). The Disclosure Statement that accompanies the Plan contains, among other things, a discussion of Debtors' history, businesses, properties, and operations, projections for those operations, risk factors associated with the business and the Plan, and a summary and analysis of the Plan and certain related matters.

**Article I.      Designation and Treatment of Administrative Claims and Priority Claims**

Administrative Claims and priority claims are defined and treated in the Plan as follows:

**Section 1.01   Class One Claims:   Administrative Expense Claims**. Class One Claims consist of Administrative Claims referred to in Section 507(a)(2) and include only administrative expenses of the Chapter 11 estates allowed under Section 503. These claims include any sums owed to the United States Trustee under 28 USC § 1930(a)(6) and professional fees owed to attorneys, accountants, or other professionals retained by Debtors during the pendency of the case.

*Treatment of Class One Claims*. Class One Claims are unimpaired. Class One Claims incurred through the Effective Date will be paid within 60 days of the Effective Date, or after Court order if necessary, unless such claimants agree to a different treatment. Those Claims payable after Court approval will be paid within 10 days after such approval is obtained. Any application for approval of a Class One Claim arising prior to Confirmation of the Plan must be filed and served no later than thirty days after the Confirmation of the Plan, *except* that application for approval and payment of any Professional Fee Claims may be made at any time during the Term of the Plan. Class One Claims will be paid from retainers held by the professionals and operating income.

**Section 1.02 Class Two Claims**: Priority Tax Claims Held by California Employment Development Department and California State Board of Equalization. Class Two Claims consists of claim entitled to priority under Section 507(a)(8) and include priority tax claims held by California Employment Development Department and California State Board of Equalization against Debtors. The amount of the Class Two Claim is about $15,000.00.

*Treatment of Class Two Claims*. The Class Two Claims will be paid in full on the Effective Date.

**Section 1.03 Class Three Claim**: Priority Tax Claim Held by California Franchise Tax Board. Class Three Claim consists of claim entitled to priority under Section 507(a)(8) and includes priority tax claims held by California Franchise Tax Board against Debtors. The amount of the Class Three Claim is about $275,000.00.

*Treatment of Class Three Claim*. The Class Three Claim will be paid in full from income generated by Debtors after the Effective Date. The Class Three Claim will accrue interest at the rate of 5 percent per annum and will be amortized over four years. The Class Two Claimant will be paid $6,335.00 each month until paid in full.

**Section 1.04 Class Four Claims**: Priority Claims held by Individuals for Deposits for Lot Reservations. Class Four Claims consists of claim entitled to priority under Section 507(a)(7) and include priority claims held by individuals up to $2,425.00 against Debtors for deposits for purchase of a home that was not delivered to the individuals on the Petition Dates. The total amount of the Class Four Claims was about $18,000.00 on the Petition Date for Ennis Homes.

*Treatment of Class Four Claim*. The Class Four Claims are unimpaired. The Class Four Claims will be refunded to the Class Four Claimants or Debtors will sell a home to the Class Four Claimants and the Class Four Claim will be applied to the purchase price of the home purchased by a Class Four Claimant in accordance with the contracts between Ennis Homes and the Class Four Claimants. Any amounts deposited by Class Four Claimants beyond $2,425.00 shall be a General Unsecured Claim or Class Twenty-Five Claim.

**Article II.    Classification and Treatment of Secured Claims.**

**Section 2.01**    Secured Claimants shall be paid consistent with the provisions of Paragraph 2.03 through 2.22 of the Plan.  Secured Claimants shall retain all rights set forth in their loan and security documents and Debtors shall perform all terms of their agreements with such claimants except as modified by the Plan.   All fees, penalties or late charges provided in the security documents shall be allowed concerning post confirmation defaults in the same percentage as the fee, penalty or charge was assessable prepetition.    However, a Secured Claimant assessing a fee, penalty or charge shall give a detailed statement concerning such assessment to Debtors and Debtors attorneys at the time the assessment is made. Detailed statements required by this Paragraph shall not be required more frequently than one time per month if there are continuing fees, penalties or late charges assessed against Debtors.   The security interests held by the Class Five through Class Twenty-Four claimants shall be extinguished when their secured claims have been paid in full.   Each secured claimant shall release its security interest from its collateral after the secured claim has been paid in full.

**Section 2.02**  All monetary defaults have been considered in the Plan.    All such defaults shall be deemed cured on confirmation of the Plan.  All nonmonetary defaults will be deemed cured on confirmation if there was a prepetition default on any claim held by the secured creditor.   A Secured Claimant may proceed in accordance with the terms of its security documents and applicable law without further order of the Court if Debtors default in any payment due after the Chapter 11 case is closed.

**Section 2.03    Class Five Claim: Secured Claim of Kern County Treasurer/Tax Collector against Debtors.**  The Class Five Claim consists of the Allowed Secured Claim of the Kern County Treasurer/Tax Collector ("Kern County") secured by a lien against the real property owned by Debtors is located in Kern County.  The amount of the Class Five Claim is about $115,000.00.

*Treatment of the Class Five Claim*: The Class Five Claim is impaired.  The Class Five Claimant will retain its liens against its collateral and the Class Five Claim will accrue interest at the rate of 18% per annum after the Effective Date.  The Class Five Claimant

will be paid the amount of its lien against any real property sold by Debtors from the proceeds received from the sale of the real property sold. Additionally, Kern County will be paid $1,500.00 each month until the Class Five Claim is paid in full. Kern County will not receive the monthly payments described herein after the Class Five Claim is satisfied through liquidation of its collateral or otherwise.

**Section 2.04   Class Six Claim: Secured Claim of Tulare County Treasurer/Tax Collector against Debtors.**   The Class Six Claim consists of the Allowed Secured Claim of the Tulare County Treasurer/Tax Collector ("Tulare County") secured by a lien against the real property owned by Debtors that is located in Tulare County. The amount of the Class Six Claim is about $1,000,000.00.

*Treatment of the Class Six Claim*: The Class Six Claim is impaired. The Class Six Claimant will retain its liens against its collateral and the Class Six Claim will accrue interest at the rate of 18% per annum after the Effective Date. The Class Six Claimant will be paid the amount of its lien against any real property sold by Debtors from the proceeds received from the sale of the real property sold. Additionally, Tulare County will be paid $5,000.00 each month until the Class Six Claim is paid in full. Tulare County will not receive the monthly payments described herein after the Class Six Claim is satisfied through liquidation of its collateral or otherwise.

**Section 2.05   Class Seven Claim: Secured Claim of Fresno County Treasurer/Tax Collector against Debtors.**   The Class Seven Claim consists of the Allowed Secured Claim of the Fresno County Treasurer/Tax Collector ("Fresno County") secured by a lien against the real property owned by Debtors that is located in Fresno County. The amount of the Class Seven Claim was about $201,000.00 on the Petition Date for Ennis Homes. However, the Class Seven Claimant has received about $140,000.00 from the sale of real property owned by debtors since the Petition Dates. Therefore, Debtors believe that the Class Seven Claim will be about $61,000.00 on the Effective Date.

*Treatment of the Class Seven Claim*: The Class Seven Claim is impaired. The Class Seven Claimant will retain its liens against its collateral and the Class Seven Claim will

accrue interest at the rate of 18% per annum after the Effective Date. The Class Seven Claimant will be paid the amount of its lien against any real property sold by Debtors from the proceeds received from the sale of the real property sold. Additionally, Fresno County will be paid $1,000.00 each month until the Class Seven Claim is paid in full. Fresno County will not receive the monthly payments described herein after the Class Seven Claim is satisfied through liquidation of its collateral or otherwise.

**Section 2.06   Class Eight Claim: Secured Claim of Kings County Treasurer/Tax Collector against Debtors.** The Class Eight Claim consists of the Allowed Secured Claim of the Kings County Treasurer/Tax Collector ("Kings County") secured by a lien against the real property owned by Debtors located in Kings County. The amount of the Class Eight Claim is about $12,000.00.

*Treatment of the Class Eight Claim:* The Class Eight Claim is impaired. The Class Eight Claimant will retain its liens against its collateral and the Class Eight Claim will accrue interest at the rate of 18% per annum after the Effective Date. The Class Eight Claimant will be paid the amount of its lien against any real property sold by Debtors from the proceeds received from the sale of the real property sold. Additionally, Kings County will be paid $500.00 each month until the Class Eight Claim is paid in full. Kings County will not receive the monthly payments described herein after the Class Eight Claim is satisfied through liquidation of its collateral or otherwise.

**Section 2.07   Class Nine Claim: Claim of Bank of America Secured by First Deeds of Trust against Real Property owned by Debtors.** The Class Nine Claim consists of the Allowed Secured Claim of Bank of America secured by a first deeds of trust against the following real property owned by Debtors:

    **a.**   Arbor Park, Phase 1, Lots 2 and 3;

    **b.**   Eagle Ranch Subdivision, Phases 3 and 6;

    **c.**   Cottonwood Estates, Phases 1 through 4;

    **d.**   Madison Crossings, 3 lots, 2 model homes, and 6 homes under construction;

e.    Quail Creek subdivision; and

f.    Eagle Glen subdivision (collectively "the Bank of America Properties").

The amount of the Class Nine Claim will be about $36,600,000.00 on the Effective Date.

*Treatment of the Class Nine Claim*: The Class Nine Claim is impaired. The Class Nine Claimant will retain its deeds of trust against the Bank of America Properties. Debtors have sold several homes from the Bank of America Properties with authorization from the Court and consent from Bank of America and paid the majority of the proceeds from the sales to the Class Nine Claimant. Debtors will continue to develop and sell the Bank of America Properties. All sales of the Bank of America Properties will be free and clear of pre-petition liens, except for the lien of the Class Nine Claim, which shall be released by way of consent of the Class Nine Claimant. The Class Nine Claim will be paid pursuant to the terms of the Debtor In Possession Credit Agreement contemplated to be entered into by Debtor ("Credit Agreement"). To the extent there is any discrepancy between the Credit Agreement, or the Interim or Final Orders approving same (the "Bank of America Financing Documents"), the Bank of America Financing Documents shall control.

**Section 2.08    Class Ten Claim: Claim of Wells Fargo Bank Secured by First Deeds of Trust against Real Property owned by Debtors and Personal Property Related thereto.** The Class Ten Claim consists of the Allowed Secured Claim of Wells Fargo Bank secured by a first deeds of trust against the following real property owned by Debtors and personal property related to the following real property:

a.    Willow Glen subdivision;

b.    Vineyard Estates subdivision;

c.    Parkside Village subdivision;

d.    New Expressions subdivision, Phase 5;

e.    Granite Ridge subdivision; and

f.    Silver Oaks, Phase 1, Lot 45 (collectively "the Wells Fargo Bank Properties").

The debt owed to Wells Fargo Bank was about $28,000,000.00 when Debtors filed the Plan; while, the value of the Wells Fargo Properties is between $13,625,000.00 and $17,300,000.00.

*Treatment of the Class Ten Claim*: The Class Ten Claim is impaired. Debtors and Wells Fargo Bank have negotiated a Stipulation for Relief from Automatic Stay dated December 4, 2009 ("the Stipulation"). The Stipulation provides that Debtors will sell the Wells Fargo Bank Properties by dates set forth in the Stipulation. Wells Fargo Bank will receive the proceeds from the sale of its collateral less costs of sale and property taxes when the escrows concerning the Wells Fargo Bank Properties close. Wells Fargo Bank shall have relief from stay to exercise its rights under state law to foreclose against the Wells Fargo Bank Properties to the extent provided for in the Stipulation and the Order approving same (the "Wells Fargo Stipulated Order").

Any balance owed to Wells Fargo Bank on its debt not paid from the liquidation of its collateral (1) through sale by Debtors or (2) foreclosure by Wells Fargo Bank will be a general unsecured or Class Twenty-Five Claim to the extent that Wells Fargo Bank is entitled to a deficiency after the liquidation of its collateral under California state law.

**Section 2.09   Class Eleven Claim: Claim of Valley Business Bank Secured by Blanket Lien Against Debtors' Personal Property – Loan No. 3678.** The Class Eleven Claim consists of the Allowed Secured Claim of Valley Business Bank known as Loan No. ending 3678 secured by a blanket lien against the Debtors personal property. The amount of the Class Eleven Claim is about $130,000.00; while, the value of Debtors' personal property is estimated to be $33,500,000.00.

*Treatment of the Class Eleven Claim*: The Class Eleven Claim is impaired. The Class Eleven Claimant will retain its lien against the Debtors' Personal Property in the full amount of its claim. The Class Eleven Claim will accrue interest at the rate of 6% per annum and be amortized and paid over 5 years. The Class Eleven Claimant will be paid $2,525.00 each month until paid in full. The Class Eleven Claimant will not receive the monthly payments described herein after the Class Eleven Claim is satisfied through liquidation of its collateral or otherwise.

**Section 2.10   Class Twelve Claim: Claim of Valley Business Bank Secured by Blanket Lien Against Debtors' Personal Property – Loan No. 9287.**   The Class Twelve Claim consists of the Allowed Secured Claim of Valley Business Bank known as Loan No. ending 9287 secured by a blanket lien against the Debtors personal property.   The amount of the Class Twelve Claim is about $130,000.00; while, the value of Debtors' personal property is estimated to be $33,500,000.00.

*Treatment of the Class Twelve Claim*:  The Class Twelve Claim is impaired. The Class Twelve Claimant will retain its lien against the Debtors' Personal Property in the full amount of its claim.   The Class Twelve Claim will accrue interest at the rate of 6% per annum and be amortized and paid over 5 years.   The Class Twelve Claimant will be paid $2,525.00 each month until paid in full.   The Class Twelve Claimant will not receive the monthly payments described herein after the Class Twelve Claim is satisfied through liquidation of its collateral or otherwise.

**Section 2.11   Class Thirteen Claim: Claim of Robert and Kristy Garavello Secured by First Deed of Trust against Various Arbor Park Lots.**   The Class Thirteen Claim consists of the Allowed Secured Claim of Robert and Kristy Garavello secured by a first deed of trust against various Arbor Park lots ("the Garavello Properties").   The amount of the Class Thirteen Claim was about $500,000.00 on the Petition Date for Ennis Homes.

*Treatment of the Class Thirteen Claim*:  The Class Thirteen Claim is unimpaired.   The Class Thirteen Claimant was paid in full on October 30, 2009 from the proceeds received from the sale of its collateral.   Therefore, the Class Thirteen Claimants shall be deemed fully satisfied and not receive distributions under the Plan.

**Section 2.12   Class Fourteen Claim: Claim of United Security Bank Secured by First Deed of Trust against Williams Ranch, Phase 1, Lot 20 and Related Personal Property.**   The Class Fourteen Claim consists of the Allowed Secured Claim of United Security Bank secured by a first deed of trust against Williams Ranch, Phase 1, Lot 20 and a perfected security interest against related personal property.   The amount of the Class Fourteen Claim was about $200,000.00 on the Ennis Homes Petition Date.

1  ***Treatment of the Class Fourteen Claim***: The Class Fourteen Claim is impaired.

2  Debtors have sold Williams Ranch, Phase 1, Lot 20. The Class Fourteen Claimant was paid

3  about $166,000.00 from the sale of Williams Ranch, Phase 1, Lot 20. The Class Fourteen

4  Claim is about $34,000.00. The Class Fourteen Claimant retains its lien against Debtors'

5  personal property. The Class Fourteen Claim will accrue interest at the rate of 6% per annum

6  and be amortized and paid over 2 years. The Class Fourteen Claimant will be paid $1,510.00

7  each month until paid in full.

8  **Section 2.13   Class Fifteen Claim: Claim of United Security Bank Secured by**

9  **First Deed of Trust against Williams Ranch, Phase 4.** The Class Fifteen Claim consists of

10  the Allowed Secured Claim of United Security Bank secured by a first deed of trust against

11  Williams Ranch, Phase 4 ("Williams Ranch"). The amount of the Class Fifteen Claim will be

12  about $1,250,000.00 on the Effective Date.

13  ***Treatment of the Class Fifteen Claim***: The Class Fifteen Claim is impaired.

14  The Class Fifteen Claimant will retain its deed of trust against Williams Ranch. Debtors will

15  continue to develop and sell Williams Ranch. All sales of houses from Williams Ranch will be

16  free and clear of pre-petition liens based upon the consent of United Security Bank. Prior to the

17  Effective Date, the Class Fifteen Claimant will have entered into a financing agreement with

18  Debtors. In such event, the approved terms of any such financing shall control following the

19  Effective Date of the Plan. In the event that such financing is not approved, the Class Fifteen

20  Claim shall have relief from stay upon the Effective Date.

21  **Section 2.14   Class Sixteen Claim: Claim of United Security Bank Secured by**

22  **First Deed of Trust against Willow Brook.** The Class Sixteen Claim consists of the

23  Allowed Secured Claim of United Security Bank secured by a first deed of trust against

24  Willow Brook subdivision. The amount of the Class Sixteen Claim was about $5,000,000.00

25  on the Petition Date for Ennis Land.

26  ***Treatment of the Class Sixteen Claim***: The Class Sixteen Claim is impaired.

27  The Class Sixteen Claim was paid about $3,930,000.00 from the proceeds received from the

28  sale of the Willow Brook subdivision. Any balance owed to United Security Bank that was

formerly secured by the Willow Brook subdivision that was not paid to United Security Bank from the liquidation of the Willow Brook subdivision will be a general unsecured or Class Twenty-Five Claim to the extent that United Security Bank is entitled to a deficiency under California state law.

**Section 2.15   Class Seventeen Claim: Secured Claim of Tri Counties Bank against Debtors' Personal Property and Debtors' Corporate Office Building.**  The Class Seventeen Claim consists of the Allowed Secured Claim of Tri Counties Bank secured by a perfected blanket lien against Debtors personal property and Debtors' corporate office building that is owned by an affiliated company.  The amount of the Class Seventeen Claim is about $1,120,000.00.

*Treatment of the Class Seventeen Claim*:  The Class Seventeen Claim is impaired.  The Class Seventeen Claimant will retain its blanket lien against Debtors' personal property.  The Class Seventeen Claim will accrue interest at the rate of 6% per annum after the Effective Date.  The Class Seventeen Claim will be amortized over 20 years.  The Class Seventeen Claimant will be paid $8,100.00 each month until paid in full.  The Class Seventeen Claim will be all due and payable on the date that is 5 years after the Effective Date.

**Section 2.16   Class Eighteen Claim: Claim of Bank of the Sierra Secured by First Deed of Trust against Royal Oaks and 190 Acres of Farmland owned by Ennis Enterprises 190, LLC.**  The Class Eighteen Claim consists of the Allowed Secured Claim of Bank of the Sierra that is a nonrecourse guarantee of the debt owed by Ennis Enterprises 190, LLC ("Ennis 190") and secured by a first deed of trust against Royal Oaks subdivision owned by Ennis Land and 190 acres of farmland owned by Ennis 190 ("the Farmland").  The Class Eighteen Claim was about $12,050,000.00 on the Petition Date of Ennis Land; while the value of the Royal Oaks subdivision is estimated to be about $1,500,000.00 and the value of the Farmland is estimated to be about $10,000,000.00.

*Treatment of the Class Eighteen Claim*:  The Class Eighteen Claim is impaired.  Bank of the Sierra foreclosed against the Farmland and credit bid $10,000,000.00 owed to the bank.  The Court entered an Order for Relief From Stay on November 10, 2009 that granted

Bank of the Sierra relief from stay to allow it to begin foreclosure proceedings against Royal Oaks. Foreclosed on that and credit bid $1.5 million with deficiency of about $750,000. The Ennis Land guarantee of the Ennis 190 debt is an nonrecourse guarantee. Therefore, Class Eighteen will not receive distributions under the Plan and any balance not paid to Bank of the Sierra from the liquidation of its collateral will not be a general unsecured or Class Twenty-Five Claim.

**Section 2.17   Class Nineteen Claim: Claim of Visalia Community Bank Secured by First Deed of Trust against Linwood and Debtors' Corporate Office Building.** The Class Nineteen Claim consists of the Allowed Secured Claim of Visalia Community Bank secured by a first deed of trust against Linwood subdivision and Debtors' corporate office building. The amount of the Class Nineteen Claim was about $1,100,000.00 on the Petition Date for Ennis Land.

*Treatment of the Class Nineteen Claim*: The Class Nineteen Claim is impaired. The Class Nineteen Claim was paid about $795,000.00 from the proceeds received from the sale of the Linwood subdivision. The Class Nineteen Claim is about $301,000.00. The Class Nineteen Claimant will retain its deed of trust against its collateral. The Class Nineteen Claim will accrue interest at the rate of 6% per annum after the Effective Date. The Class Nineteen Claim will be amortized over 20 years. The Class Nineteen Claimant will be paid $2,175.00 each month until paid in full.

**Section 2.18   Class Twenty Claim: Claim of Citizens Business Bank Secured by First Deed of Trust against Silver Springs.** The Class Twenty Claim consists of the Allowed Secured Claim of Citizens Business Bank secured by a first deed of trust against Silver Springs subdivision. The amount of the Class Twenty Claim was about $3,500,000.00 on the Petition Date for Ennis Homes; while, the value of the Silver Springs subdivision was about $2,500,000.00.

*Treatment of the Class Twenty Claim*: The Class Twenty Claim is impaired. The Class Twenty Claim was paid about $1,630,000.00 from the proceeds received from the sale of the majority of the Silver Springs subdivision. A receiver will be appointed to oversee

the liquidation of the remainder of the Silver Springs subdivision. The Class Twenty Claimant will receive the proceeds received from the sale of the remainder of the Silver Springs subdivision less receiver costs, costs of sale and property taxes. The deficiency of the Class Twenty Claim owed to Citizens Business Bank will be a general unsecured or Class Twenty-Five Claim to the extent that Citizens Business Bank is entitled to a deficiency under California state law.

**Section 2.19   Class Twenty-One Claim: Claim of Chicago Title Company Secured by Possession of Debtors' Money.** The Class Twenty-One Claims consists of the Allowed Secured Claims of Chicago Title Company secured by a possession of about $680,000.00 of Debtors' money. The amount of the Class Twenty-One Claim is about unknown to Debtors.

*Treatment of the Class Twenty-One Claim*: The Class Twenty-One Claim is impaired. Chicago Title Company filed a Proof of Claim, Claim No. 83, asserting a claim in the amount of about $2,500,000.00. Chicago Title Company asserted that its claim is secured in part, priority in part and unsecured in part. Debtors dispute the amount and characterization of the Class Twenty-One Claim and (1) have filed an Adversary Proceeding to determine the nature, extent and validity of Chicago Title Company's interest in Debtors' money held by Chicago Title Company and (2) will file an objection to the allowance of Claim No. 83 filed by Chicago Title Company no later than the Confirmation Date. Any resulting priority claim shall be accrue interest at the rate of 6% per annum and be paid in equal installments over the period of three (3) years and any resulting general unsecured claim shall be treated as a Class Twenty Five Claim. The Class Twenty-One Claimant shall be entitled to retain monies in its possession to the extent of its allowed secured claim and remit any remaining funds to the Debtors within ten (10) days of the entry of an order determining the extent and validity of the Class Twenty-One Claimant's secured claim.

**Section 2.20   Class Twenty-Two Claims: Secured Claims of Creditors that have filed Mechanic's Liens against Debtors' Real Property.** The Class Twenty-Two Claims consists of the Allowed Secured Claims of Mechanic's Lienholders secured by a lien against

Debtors' Real Property. The amount of the Class Twenty-Two Claims are about $1,000,000.00. The Class Twenty-Two Claims will be divided into two subclasses – Class Twenty-Two(a) Claims and Class Twenty-Two(b) Claims. Class Twenty-Two(a) claims are those claims secured by Mechanic's Lien, the validity of which is not disputed by Debtors. The Class Twenty-Two(b) Claims are those claims secured by Mechanic's Liens, the validity of which is disputed by Debtors.

*Treatment of the Class Twenty-Two(a) Claims*: The Class Twenty-Two(a) Claims are impaired. The Class Twenty-Two(a) Claimants shall retain their mechanic's liens against the real property to which they attach. The Class Twenty-Two(a) Claims shall accrue interest at the rate of 6% per annum from and after the Effective Date. The Class Twenty-Two(a) Claims shall be from the proceeds of the sale of real property to which the liens attach. To the extent any such Class Twenty-Two(a) Claim is unsecured under 11 USC Section 506, it shall be treated as a Class Twenty-Five Claim.

*Treatment of the Class Twenty-Two(b) Claims:* The Class Twenty-Two(b) Claims are impaired. Debtors will obtain releases of disputed mechanic's liens or will pursue adversary proceedings to determine, nature, extent and validity of liens securing the Class Twenty-Two(b) Claims. Any sale of real property under this Plan shall be free and clear of liens, claims, and interests pursuant to 11 U.S.C. Sections 363(f) and 1129(b)(2)(A)(ii). Class Twenty-Two(b) Claimants that release their mechanic's liens will have Class Twenty-Five Claim in the allowed amount of the debt owed to the Claimant. To the extent that any Class Twenty-Two(b) Claimant is determined to have an allowed secured claim, they will receive the treatment identified for the Class Twenty-Two(a) Claims.

**Section 2.21   Class Twenty-Three Claim: Secured Claim of GMAC against Debtors' 2007 Saturn Vue – Loan  9779.** The Class Twenty-Three Claim consists of the Allowed Secured Claim of GMAC secured by a perfected security interest in a 2007 Saturn Vue automobile owned by Debtors known as Loan No. ending 9779. The amount of the Class Twenty-Three Claim will be about $5,000.00 on the Effective Date.

*Treatment of the Class Twenty-Three Claim*: The Class Twenty-Three Claim is unimpaired. The Class Twenty-Three Claimant will retain its security interest against the Saturn Vue. The Class Twenty-Three Claim is unmodified by the plan and will be paid as required by the contract between Ennis Homes and GMAC.

**Section 2.22   Class Twenty-Four Claim: Secured Claim of GMAC against the a 2007 Saturn Vue – Loan 9505.** The Class Twenty-Four Claim consists of the Allowed Secured Claim of GMAC secured by a perfected security interest against a 2007 Saturn Vue known as Loan No. ending 9505. The amount of the Class Twenty-Four Claim was about $4,800.00 on the Petition Date for Ennis Homes.

*Treatment of the Class Twenty-Four Claim*: The Class Twenty-Four Claim is unimpaired. The Class Twenty-Four claim was paid in full from the proceeds received from the sale of the Saturn Vue.

**Article III.       Classification and Treatment of Non-priority Unsecured Claims: Impaired Claims.**

**Section 3.01   Class Twenty-Five Claims: Allowed Claims of General Unsecured Creditors against Debtors.** The Class Twenty-Five Claims will consist of the Allowed Claims of general unsecured creditors. The Class Twenty-Five Claims include (a) general unsecured claims existing when Debtors filed for relief under Chapter 11, (b) the unsecured portions of any secured claims as provided for under Section 506, (c) deficiency claims against following the liquidation of a secured creditors collateral to the extent allowed under California state law, and (d) claims based on guarantees of the debts of other persons. The amount of the allowed Class Twenty-Five Claims will be range between $18,000,000.00 and $30,000,000.00 depending on allowable deficiency under state law.

*Treatment of the Class Twenty-Five Claims*: The Class Twenty-Five Claims are impaired. The Class Twenty-Five Claims will not accrue interest. All Class Twenty-Five Claims will receive a pro rata share of $400,000.00 each year from 2010 through 2014 inclusive. Distributions to Class Twenty-Five Claimants will occur on or before June 30 and December 31 of each year. The distributions will be based upon the amount of each Class

Twenty-Five Claimants' Allowed Claim, exclusive of any Class Twenty-Seven Claims. Additionally, Class Twenty-Five Claimants will share pro rata supplement payments of (a) unencumbered accounts receivables collected by Debtors, less costs of collection and (b) net proceeds from the sale of unencumbered assets. Such supplemental payments shall be made in accordance with Section 9.02 no later than semi-annually.

**Section 3.02    Class Twenty-Six Claims: Allowed Claims of Construction Defect Litigation Claimants.**  The Class Twenty-Six Claims will consist of the Allowed Claims of persons that purchased homes from Debtors pre-petition and assert a claim against Debtors for damages resulting from alleged defective home construction.  The amount of the Class Twenty-Six Claims is unknown.

*Treatment of the Class Twenty-Six Claims*:  The Class Twenty-Six Claims are impaired.  The Class Twenty-Six Claims are disputed.  Debtors are insured against liability on the Class Twenty-Six Claims.  Class Twenty-Six Claimants will be treated as Class Twenty-Five Claims.  However, Class Twenty-Six Claimants will not receive a distribution as a Class Twenty-Five Claimant until the claimant's claim is liquidated through (1) settlement or (2) judgment.  However, Class Twenty-Six Claims will be reduced by any amount paid toward a Class Twenty-Six Claims from applicable insurance.

**Section 3.03    Class Twenty-Seven Claims: Allowed Unsecured Claims Held by Insiders against Debtors.**  The Class Twenty-Seven Claims will consist of the Allowed Claims of insiders that are unsecured.  The amount of the allowed Class Twenty-Seven Claims will be about $3,500,000.00 on the Effective Date.

*Treatment of the Class Twenty-Seven Claims*:  The Class Twenty-Seven Claims are impaired.  The Class Twenty-Seven Claims are setoff to the extent that Debtors hold claims against the Class Twenty-Seven Claimants.  The Class Twenty-Seven Claims will not accrue interest.  All Class Twenty-Seven Claims shall be subordinated to Class Twenty-Five Claims and shall not receive any distributions until all other non-Insider Claims are fully satisfied.

///

///

**Article IV.   Provisions for Executory Contracts and Unexpired Leases.**

      **Section 4.01   Class Twenty-Eight Claims: Executory Contracts and Unexpired Leases.** The Class Twenty-Eight Claims shall consist of all executory contracts and unexpired Leases of Debtors.  The Class Twenty-Eight Claims are unimpaired under the Plan.  All executory contracts not rejected prior to the Effective Date will be assumed under the Plan.  Any general unsecured claim arising out of the rejection of executory contracts by Debtors will be treated as a Class Twenty-Eight Claim and any such claim shall be filed no later than thirty (30) days following the Effective Date or the date of an Order approving the rejection of such contract or lease.  Any allowed Administrative Claim arising out of the rejection of the executory contracts by Debtors after confirmation of the Plan shall be treated as a Class One Claim.

**Article V.   Provision for Interests of Principals of Debtors**

      **Section 5.01   Class Twenty-Nine Claims:  Interests of Ben Ennis, Brian Ennis Pam Ennis-Coons, and Family Trust.** Class Twenty-Nine Claims are the interests of Ben Ennis, Brian Ennis Pam Ennis-Coons, and the family trust of which Ben Ennis' grandchildren are the beneficiaries – the shareholders of Debtors.

      *Treatment of the Class Twenty-Nine Claims*:   The Class Twenty-Nine Claims are impaired.  The Class Twenty-Nine Claimants will retain their interests in Debtors, but shall receive no direct or indirect distributions from Debtors until the payments required under the Plan are completed.  However, the Class Twenty-Nine Claimants may be compensated for their actual services provided to Debtors.

**Article VI.   Provisions for Interests of Debtors**

      **Section 6.01   Class Thirty Claims:  Interests of Debtors:** The Class Thirty Claims are the claims or interests held by Debtors.  Debtors will retain their assets and will not be required to liquidate any of their assets except as provided in the Plan.  Additionally, Debtors will manage their affairs subject to the provisions of the Plan without the appointment of a trustee or other outside management or control.  The assets owned by Debtors will revest in Debtors upon the Effective Date.

## Article VII.    Means for Executing the Plan

**Section 7.01    Best Efforts.**  Debtors shall undertake their best efforts to see that the terms and conditions of the Plan are met, that the payments are made consistent with the income projections provided herein, and that the expenses allocated for the operation of Debtors' business are kept with the estimated amounts.

**Section 7.02    Substantive Consolidation.**  Debtors are engaged in a common enterprise with similar assets and debts.  Debtors will be Substantively Consolidated for the purposes of the Plan pursuant to the terms and conditions of the Order Approving Substantive Consolidation.  In the event such an Order is entered prior to the Effective Date, all references in the Plan to "Debtors" shall mean Ennis Homes, Inc., the surviving entity.  In the event that the Debtors are not substantively consolidated, each Debtor shall remain liable for their respective claims treated under the Plan and nothing in the Plan shall be deemed to create joint or several liability where none otherwise fails to exist under the applicable agreements or California law.

**Section 7.03    Operation of Business.**  Debtors will continue the operation of their business during the Plan.  Debtors business involves acquiring land, developing the land into residential housing, and selling the developed houses as more fully described in the Joint Disclosure Statement filed by Debtors.  Except as otherwise provided in the Plan, all real property sales shall be free and clear of pre-petition liens even if the proceeds received from the sale are insufficient to pay all liens against the home being sold provided that the proceeds of the sale are distributed according to the terms of the Plan.

**Section 7.04**  Debtors believe that they will sell between 133 and 287 homes each year for the next five years to generate income for the operation of the business and to fund the Plan.  Debtors project cash inflows from sales and loans of $21,062,800.00[3] and expenses direct and indirect expenses of $19,556,200.00 in 2010.  This means that Debtors will have about $2,256,600.00 of disposable income in 2010 to fund the Plan. The following table

---

[3] The Cash Inflows includes draws on construction loans, but is net of release prices paid directly to lenders for a partial release of its deed of trust.

summarized Debtors projected cash inflows, expenses and disposable income for the years 2011, 2012, 2013, and 2014. Detailed budgets and sales projections are included in the Exhibits.

| Year | Cash Inflows[3] | Total Expenses | Disposable Income |
|------|-----------------|----------------|-------------------|
| **2011** | $26,834,976.00 | $27,992,100.00 | $1,099,476.00 |
| **2012** | $35,350,032.00 | $35,909,430.00 | $540,078.00 |
| **2013** | $45,946,539.00 | $45,436,728.00 | $599,889.00 |
| **2014** | $50,608,807.00 | $50,711,398.00 | $497,298.00 |

**Section 7.05**    Any surplus generated by Debtors in excess of that required by the Plan may be used to meet Debtors' business needs or to prepay any claim provided for by the Plan.

**Section 7.06    Debtor Financing.** Debtors will obtain construction financing from Bank of America, United Security Bank, and potentially other lenders. Any such proposed financing prior to the Effective Date shall be the subject to bankruptcy court approval. Debtors shall be permitted to obtain financing following the Effective Date without court approval or creditor consent except to the extent inconsistent with the Plan or the agreements between Debtor and any lender whose financing is approved by the court prior to the Effective Date.

**Section 7.07    Debtors' Administration of Business.** Debtors will manage Debtors' operations including constructing and selling residential homes, including without limitation:

a.    Debtors are authorized to employ officers, managers, agents, brokers, representatives and attorneys to carry out any activity authorized by this Plan;

b.    Debtors are authorized to sell homes free and clear of liens in the ordinary course of business, so far as the sales are consistent with the terms of the Plan, without further order of the Court;

c.    Debtors are authorized to pay ordinary operating costs and current taxes without further order of the Court;

d.    Debtors retain the right to prosecute all claims arising from any dispute involving Debtors or any property within its control;

e. Except as otherwise provided in the Plan, Debtors are authorized to distribute its property and the proceeds from any sale of its property to the creditors of Debtors and those entitled to receive such distribution under the terms of this Plan.

f. Debtors may, but are not required to, prosecute any claims against other entities including, but not limited to, any avoidance actions to recover fraudulent transfers or preferential payments.

g. Debtors may, but are not required to, object to any claim pursuant to the Plan, whether in the Chapter 11 Case or otherwise, and may pursue such litigation as is appropriate to resolve such disputes and objections.

h. Debtors may, but are not required to, pursue any claim for monetary damages that Debtors determine are appropriate, against any person or entity.

i. Debtors may enter into agreements with subcontractors and suppliers for the payment of work performed and/or materials supplied for new homes built. Payment will be made from the proceeds from the close of escrow of each home that was improved by the subcontractor services and/or materials supplied. Debtors will receive lien releases in exchange for payment for services and/or materials related to each home at the time each escrow closes. These agreements will be consistent with the loan agreements between Debtors and their lenders as well as this Plan.

**Section 7.08  Post-Confirmation Expenses.** The reorganized Debtors shall be entitled to expend funds reasonably necessary to carry out the terms of the Plan. Pre-confirmation Professional Fee Claims shall be paid only upon application to and approval of the Court. Expenses that can be paid in the ordinary course of business, including post-confirmation professional fees, shall continue to be paid in the ordinary course of business.

**Article VIII.  Claims Handling**

**Section 8.01  Ownership and Transfer of Claims.** For purposes of any Distribution under the Plan, Debtors have no obligation to recognize any transfer of Claims occurring on or after the Distribution date. Debtors are permitted to recognize and deal for all purposes with only those Claimants of record stated on the claims docket maintained by the Court, or

scheduled in the list of creditors filed with the Court under Bankruptcy Rule 1007 and not listed as disputed, contingent, or unliquidated as to amount, and to which no objection has been interposed.

**Section 8.02   Amendments to Claims.**   In order for Debtors to settle disputes and otherwise implement the Plan, a proof of claim may be amended to increase or liquidate the amount or priority of such Claim after the Bar Date, but only as agreed upon by Debtors and the holder of such Claim, or as otherwise permitted by the Court, the Bankruptcy Rules or applicable law.   Without limiting the previous sentence in any manner, unless otherwise provided in the Plan, proofs of claim shall not be filed or amended after Confirmation of the Plan unless the amendment is solely to decrease the amount or priority of the Claim. Any such new or amended Claim filed after the Confirmation of the Plan is disallowed in full and is expunged without any action by the Debtors.

**Section 8.03   Disputed Claims.**   Except as otherwise provided in the Plan, Debtors may object to the allowance of Claims filed with the Court if Debtors dispute liability, priority, or amount, including, without limitation, objections to Claims that have been assigned and the assertion of the doctrine of equitable subordination with respect thereto.   All objections may be litigated to Final Order, or compromised, or withdrawn.   Unless otherwise ordered by the Court, the Debtors will file and serve all objections to Disputed Claims no later than the Objection Date, or such other date as may be approved by the Court.

**Section 8.04   Objection Date.**   There shall be no fixed Objection Date for any Claims other than the Class Twenty-One, Twenty-Two, and Twenty-Five Claims.   The Objection Date with respect to Class Twenty-One, Twenty-Two, and Twenty-Five will be the Effective Date.

**Section 8.05   Estimation of Claims.**   Unless otherwise limited by a Final Order of the Court, Debtors may at any time request the Court to estimate for final distribution purposes any contingent, unliquidated or Disputed Claim pursuant to section 502(c) of the Code or otherwise, regardless of whether Debtors or others previously objected to such Claim, and the Court shall retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal

relating to any such objection. If the Court estimates any contingent, unliquidated, or Disputed Claim, the estimated amount shall constitute either the allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court; provided however, that if the estimate constitutes the maximum limitation on such Claim, Debtors may elect to pursue supplemental proceedings to object to any ultimate allowance of such Claim. All of the aforementioned Claims objection, estimation, and resolution procedures are cumulative and not necessarily exclusive of one another.

**Section 8.06   Allowance of Disputed Claims.** When a Disputed Claim becomes, in whole or in part, an Allowed Claim, Debtors shall distribute to the Claimant the distributions the Claimant is then entitled to under the Plan, together with any permitted interest. Such distribution, if any, shall be made on or after the date that the order or judgment of the Court allowing such Disputed Claim becomes a Final Order, or after amendment, but not more than thirty (30) days thereafter.

**Article IX.    Payments to Creditors Under the Plan**

**Section 9.01   Distributions.** There shall be an initial distribution and subsequent distributions to creditors under the Plan. Timing of such distributions shall be made as described in the Plan.

**Section 9.02   Notices of Proposed Distribution.** Thirty days prior to any supplemental distributions described in Section 3.01 of the Plan, Debtors shall provide notice of the amount of the Available Cash to be distributed, the proposed distribution, the amount of any proposed reserve, and the date for any objections to the proposed distribution. In the absence of a timely objection or other Order of the Court, Debtors shall be entitled to make the distribution in the amounts set forth in the proposed distribution.

**Section 9.03   Method of Payment.** The method of payment shall be at the election of Debtors, but may include, without limitation, bank check, business check, or wire transfer.

**Section 9.04   Means of Distribution.** Distributions by mail to holders of Allowed Claims shall be made as follows: (1) at the addresses set forth on the respective proofs of claim by such holders; (2) at the addresses set forth in any written notices of address changes

delivered to Debtors after the date of any related proof of claim; or, (3) at the address designated in any written agreement between Debtors and such Claimants or so designated by order of the Court.

Section 9.05   **Holding of and Failure to Claim, Undeliverable Distributions.**  All Distributions are to be made by Debtors to the holder of each Allowed Claim at the holder's address as described under section 9.03.   If any holder's Distribution is returned as undeliverable, no further Distributions to such holder will be made unless and until Debtors are notified of such holder's then current address, at which time all required Distributions shall be made to such Claimant.   Undeliverable Distributions shall be held by Debtors until such Distributions are claimed, so long as they are claimed within ninety (90) days following a Distribution.   After 90 days, all unclaimed Distributions revert to Debtors, and the Claim of any Claimant or its successor with respect to the Distribution shall be discharged and forever barred, notwithstanding any federal or state escheat laws to the contrary.

**Article X.     Voting**

Section 10.01 **Acceptance/Rejection Votes.**   All creditors are entitled to vote with respect to each of the Chapter 11 cases in which the creditor holds an allowed claim.  The Plan will be confirmed if the requirements of 11 USC Section 1129 are met with respect to each of the Chapter 11 cases filed by Debtors.  To the extent any Class impaired under the Plan and entitled to vote does not accept the Plan by the requisite statutory majority provided in Section 1126(c), or is deemed to have rejected the Plan, Debtors shall request confirmation of the Plan under Section1129(b).

Section 10.02 **Impaired Classes to vote.**  Each holder of a Claim in an impaired Class will be entitled to vote separately to accept or reject this Plan, unless such holder is deemed to accept or reject this Plan.

Section 10.03 **Acceptance by Class of Creditors.**   An impaired Class of holders of Claims will have accepted this Plan if this Plan is accepted by at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims of such Class that have voted to accept or reject this Plan.  A Class of holders of Claims shall be deemed to accept this

Plan in the event that no holder of a Claim within that Class submits a ballot by the deadline for the return of ballots.  Proponent requests Confirmation of this Plan under Sections 1129(a) and 1129(b).

**Article XI.    Effect of Confirmation**

**Section 11.01  Terms Binding**.  On the Effective Date, all provisions of this Plan will be binding upon Debtors, all Claimants, and all other individuals and entities who are affected in any manner by the Plan.

**Section 11.02  Discharge.**  All Claims against Debtors that exist upon Confirmation of the Plan will be discharged and all pre-petition defaults deemed cured in exchange for the payments required under the Plan.  Notwithstanding the foregoing, nothing the Plan shall be deemed to (a) discharge any Claim against any non-Debtor guarantor or obligor on any Claim or (b) discharge any indebtedness arising out of post-petition and pre-Effective Date financing approved by the Court.

**Section 11.03  Injunction.**  Claimants are permanently enjoined from commencing or continuing any action to collect, recover, or offset any released Claim as a personal liability of Debtors, to the fullest extent permitted by Sections 1141(d)(1) and 524.

**Section 11.04  Preservation of Avoidance Actions Claims and Rights.**  On and after the Effective Date, Debtors will retain any avoidance actions, including any preference claims or fraudulent conveyance claims.  The Debtors may also assert such avoidance actions in the context of defeating any Disputed Claim.  Except for the releases and waivers expressly stated in this Plan, nothing in the Plan waives the avoidance and other powers of Debtors under the Code or the Bankruptcy Rules.  Debtors retain after Confirmation and after the Effective Date of the Plan, all powers granted by the Code and the Bankruptcy Rules, including but not limited to all claims held by a trustee or debtor in possession arising on or before the Effective Date.  Confirmation of the Plan does not release any Claim held by Debtors or the estate, unless the Plan or Confirmation Order specifically and unambiguously so provides.

**Section 11.05 Statutes of Limitation.**    All applicable statutes of limitations and extensions thereto, including but not limited to any applicable state law statute of limitations

and Sections 108, 546, and 550 will remain in full force and effect and available to the Debtors as if Debtors were a trustee in bankruptcy.

**Article XII.  Amendments or Modifications to the Plan**

Section 12.01 **General Arrangements.**  This Plan may be amended or modified in the manner prescribed in Section 1127.  A holder of a Claim that has accepted or rejected this Plan will be deemed to have accepted or rejected, as the case may be, this Plan as modified, unless, within applicable time periods, such holder changes its previous acceptance or rejection.

Section 12.02 **Amendment of the Plan.**  At any time before Confirmation of the Plan, Debtors may alter, amend, or modify the Plan under Section 1127(a); provided that such alteration, amendment, or modification does not materially and adversely affect the treatment and rights of the holders of Claims under this Plan.  After the Confirmation of the Plan and before substantial consummation of the Plan as defined in Section 1101(2), Debtors may, under Section 1127(b), institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation order, and such matters as may be necessary to carry out the purposes and effects of the Plan, so long as such proceedings will not materially and adversely affect the treatment of holders of Claims under the Plan; provided, that prior notice of such proceedings shall be served in accordance with the Bankruptcy Rules or applicable order of the Bankruptcy Court.  At any time after Confirmation of the Plan, Debtors may modify the Plan so long as such modification is accomplished consistent with the Code.

Section 12.03 **Revocation or Withdrawal of the Plan.**  Debtors reserve the right to revoke or withdraw this Plan at any time before Confirmation of the Plan.

Section 12.04 **Reservation of Rights.**  Neither the filing of the Plan or Disclosure Statement, or provision contained in the Plan or in the Disclosure Statement, nor the taking by any party in interest of any action with respect to the Plan, shall (a) be or be deemed to be an admission against interest, and (b) until the Effective Date, be or be deemed to be a waiver of any rights any party in interest may have (i) against any other party in interest, or (ii) in any of the assets of any other party in interest, and, until the Effective Date, all such rights are

specifically reserved. In the event that the Plan is not confirmed or fails to become effective, neither the Plan nor the Disclosure Statement may be used or relied upon in any manner in any suit, action, proceeding, or controversy within or without this Chapter 11 Case involving Debtors or the estates, except with respect to Confirmation of the Plan.

**Section 12.05 Jurisdiction of the Court**

The Court will retain jurisdiction until the Plan has been fully consummated including, but not limited to, for the following purposes:

**Section 12.06 Classification of Claims.** The Court will retain jurisdiction until the Plan has been fully consummated for the purpose of classifying Claims, reexamining Claims which have been allowed for the purpose of voting and determining such objection as may be filed to Claims. The failure to object to or examine any Claims for the purposes of voting will not be deemed to be a waiver of the right to object to or reexamine the Claim.

**Section 12.07 Determination of Disputes.** The Court will retain jurisdiction until the Plan has been fully consummated for the purpose of determining questions and disputes regarding title to Assets of the estate and determining causes of action, controversies, disputes, or conflicts between Debtors and any party relating to assets or Claims whether or not subject to action pending as of the date of confirmation.

**Section 12.08 Correction of Defect.** The Court will retain jurisdiction for the purpose of correcting any defect, curing any omissions, or reconciling any inconsistency in the Plan as may be necessary to carry out the purpose and intent of the Plan.

**Section 12.09 Modification.** The Court will retain jurisdiction under the Code and the Bankruptcy Rules for the purpose of modifying or clarifying the Plan after confirmation.

**Section 12.10 Enforcement.** The Court will retain jurisdiction for the purpose of enforcing and interpreting the Plan and for the entry of any order necessary to enforce the rights, title, and powers of Debtors and to impose such limitations, restrictions, terms, and conditions concerning such rights, title, and powers as the Court may deem necessary.

**Section 12.11 Determination of Default.** The Court will retain jurisdiction to determine whether a default has occurred under the Plan and may make such orders as the

Court may deem necessary to enforce the Plan including ordering a modification of the Plan, converting the case to Chapter 7, or such other relief as may be appropriate.

**Section 12.12 Causes of Action.** Debtor will retain any prepetition causes of action arising before confirmation of the Plan including causes of action held by a trustee under the Code. The right to pursue such actions shall continue after Confirmation of the Plan and the Court will have jurisdiction to hear such complaints.

**Section 12.13 Termination.** The Court will retain jurisdiction to enter an order concluding and terminating this case.

**Article XIII. Miscellaneous Provisions**

**Section 13.01 Taxes.** Each holder of an Allowed Claim that has received a Distribution has sole responsibility for the satisfaction or payment of any tax obligation imposed by any governmental unit. For tax purposes, Distributions received in respect of Allowed Claims will be allocated first to unpaid accrued interest, then to the principal amount of such Claims.

**Section 13.02 Severability.** If any provision of this Plan is determined to be unenforceable, the enforceability, operation, or effect of any other provision of this Plan is not affected. So long as the Plan still fulfills its essential purpose, any unenforceable provision is severed from the Plan.

**Section 13.03 Successor and Assigns.** The rights and obligations of any party in interest to this Plan are binding on, and inure to the benefit of, the successors and assigns of such party in interest.

**Section 13.04 Effectuating Documents; Further Transactions.** The Debtors are authorized and directed to take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan and the Confirmation order, and to take all actions necessary or appropriate to effectuate the provisions of this Plan. The Debtors may engage counsel to assist in its duties, including counsel who may have previously represented Debtors or Debtors-in-possession.

*///*

**Section 13.05 Modification of Payment Terms.** At any time after the Effective Date, Debtors may modify the treatment of any Allowed Claim, so long as the holder whose Allowed Claim is being adversely affected consents in writing.

**Section 13.06 De Minimis Distributions.** Notwithstanding anything to the contrary contained in the Plan, the Debtors will not disburse cash to the holder of an Allowed Claim in an impaired class of claims if the amount of cash otherwise due for such distributions is less than $25.00.

**Section 13.07 Incorporated Provisions to Reconcile with the Disclosure Statement.** Because the Plan and the Disclosure Statement are interactive, they should be reconciled and consistent with each other. However, the terms of this Plan supersede any statements in the Disclosure Statement and shall control.

**Article XIV. Payment of Quarterly Fees and Post Confirmation Status Reports**

**Section 14.01 Payment of Quarterly Fees.** The Court will retain jurisdiction until the Plan has been substantially consummated and the Court enters an order concluding and terminating the case. Debtors will pay Quarterly Fees to the United States Trustee after the Effective Date and until the Court enters an order concluding and terminating the case. Debtors will pay the Quarterly Fees owed to the United States Trustee from income generated by the operation of its business and the payment of Quarterly Fees shall not affect feasibility of the Plan.

**Section 14.02 Post-Confirmation Status Reports.** Debtors will file Post-confirmation Status Reports with the Bankruptcy Court one time every three months until the dismissal of the case, conversion of the case, or entry of a Final Decree closing the case. The Post-confirmation Status Reports will explain the progress made by Debtors toward substantial consummation of the Plan. A Post-confirmation Status Report shall be filed with the Court for the quarter within which the Plan is confirmed. Subsequent Post-confirmation Status Reports will be filed at the expiration of each quarter thereafter until dismissal of the case, conversion of the case, or entry of a Final Decree closing the case. Post-confirmation Status Reports will be filed with the Court and served on the United States Trustee not later than twenty days after

the expiration of a reporting period. Post-confirmation Status Reports will be served on the United States Trustee not later than the day on which the report is filed with the Court. The Post-confirmation Status Reports will include information to enable the Court to determine:

      a.     whether the order Confirming the Plan of Reorganization has become a Final Order;

      b.     whether deposits required by the Plan have been distributed;

      c.     whether any property proposed by the Plan to be transferred has been transferred;

      d.     whether the reorganized Debtors have assumed the business or management of property dealt with under the Plan;

      e.     whether payments under the Plan have been commenced;

      f.     whether fees owed to the United States Trustee pursuant to 28 U.S.C. section 1930 have been paid to the date of the Post-confirmation Status Report; and

      g.     whether all motions, contested matters, adversary proceedings, and other litigation involving Debtor has been concluded.

**Article XV.    Definitions and Rules of Interpretation.**

    **Section 15.01  Definitions.**

    **"Administrative Claim"** means a Claim for payment of an administrative expense of a kind specified in section 503(b) of the Code and entitled to priority under section 507(a)(2) of the Code, including, but not limited to Professional Fee Claims and claims for unpaid post-petition rents filed on or before the Administrative Claims Bar Date.

    **"Administrative Claims Bar Date"** means 30 days after the entry of the Order confirming the Plan.

    **"Allowed Claim"** means a claim (a) for which a proof of claim has been filed within the period fixed by Bankruptcy Rule 3001 or Final Order of the Court or (b) scheduled in the list of creditors filed with the Court pursuant to Bankruptcy Rule 1007(b) and not listed as disputed, contingent, or unliquidated as to amount and to which no objection has been interposed.

1     **"Available Cash"** means the amount of unencumbered funds held by Debtors on the

2 date of any proposed distribution to Allowed Claims, less an amount deemed necessary by

3 Debtors to maintain in reserve for accrued or anticipated operating costs and administrative

4 expenses pursuant to the procedure set forth in Section 9.02 of the Plan.

5     **"Budgets"** means the Ennis Homes and Ennis Land Development – Summary Cash

6 Flow that is attached to the Joint Disclosure Statement filed concurrently herewith as Exhibit

7 "D".

8     **"Claim"** means any right to payment against Debtors in existence upon the

9 Confirmation of the Plan, whether or not such right to payment is reduced to judgment,

10 liquidated, unliquidated, disputed, undisputed, legal, secured, or unsecured.

11     **"Claimant"** means the person or entity holding a Claim.

12     **"Class"** means any class into which Claims are classified pursuant to this Plan.

13     **"Code"** means Title 11 of the United States Code.

14     **"Confirmation"** means the entry of a order of the Court confirming the Plan.

15     **"Confirmation Date"** means the date of the entry of an order of the Court confirming

16 the Plan.

17     **"Court"** means the United States Bankruptcy Court for the Eastern District of

18 California.

19     **"Debtors"** means Ennis Homes, Inc. and Ennis Land Development, Inc.

20     **"Disclosure Statement"** means the Joint Disclosure Statement filed by Debtors filed

21 concurrently herewith.

22     **"Disputed Claims"** means claims for payment filed by individuals or entities seeking

23 to be paid from assets of the estate that Debtors believe are not owed, are not owed in the

24 amount of the claim filed, or assert improper priority, and to which Debtors objects on or

25 before the date required by this Plan.

26     **"Distributions"** means payments to the holder of an Allowed Claim as provided by the

27 Plan.

28

"**Effective Date**" means the date Order Confirming Debtors' Plan is entered by the Court.

"**Executory Contracts**" means contracts and unexpired leases that were executory on the Petition Date within the meaning of section 365 of the Code.

"**Final Decree and Order Closing the Chapter 11 Case**" means the Order of the Court determining that Debtor's estate has been fully administered and that the Plan has been substantially consummated, and closing the case.

"**Final Order**" means an order or judgment of the Court or other court of competent jurisdiction that has not been reversed, stayed, modified or amended, and as to which the time to appeal has expired without such an appeal.

"**Impaired Claim**" means a Claim that will not receive full payment under the Plan consistent with the contractual rights of the claimant.

"**Objection Date**" means the date set by the Plan, or if not by the Plan by order of the Court, setting the deadline for Debtors to file objections to any timely filed proof of claim filed by a Claimant.

"**Petition Date**" means the date on which the Debtors commenced their Chapter 11 cases, and, where relevant, the time of the filing of Debtors' Chapter 11 petition.

"**Plan**" means this Joint Plan of Reorganization.

"**Professional Fee Claims**" means an Administrative Claim of a professional for compensation for services rendered or reimbursement of costs, expenses, or other charges and disbursements incurred during the period from the Petition Date through the last day of the calendar month immediately preceding the date of Confirmation.

"**Term of the Plan**" means that period of time from the date on which Debtors filed their Voluntary Petition to the date on which the Court enters an order closing this case.

"**Unimpaired Claim**" means a Claim that will receive full payment under the Plan consistent with the contractual rights of the Claimant.

///

///

**Section 15.02 Rules of Interpretation.** Unless otherwise specified, all article, section, exhibit, or schedule references in this Plan are to the respective article in, section in, exhibit to, or schedule to the Plan, as the same may be amended, waived, or modified from time to time. Whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural and any pronoun stated in the masculine, feminine or neuter gender will include the masculine, feminine and neuter gender. Captions and headings in the Plan are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof. Whenever the words "include," "includes" or "including" are used in this Plan, they are deemed to be followed by the words "without limitation," whether or not they are in fact followed by those words or words of like import.

References from or through any date mean, unless otherwise specified, from and including or through and including, respectively. Any references in the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document will be substantially in such form or substantially on such terms and conditions.

With respect to any reference in the Plan to a consent, approval, or acceptance by any party that shall not unreasonably be withheld, or to an issue, agreement, order or other document (or the terms thereof) that shall be reasonably acceptable to any such party, such consent, approval or acceptance shall not be unreasonably conditioned, delayed or withheld.

**Section 15.03 Computation of Time.** In computing any period of time prescribed or allowed by the Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006(a) apply. In the event that any payment, distribution, act, or deadline under the Plan is required to be made or performed or occurs on a day that is not a business day, then the making of such payment or distribution, the performance of such act or the occurrence of such deadline, is deemed to be on the next succeeding business day without interest, but will be deemed to have been completed or to have occurred as of the required date.

**Section 15.04 Exhibits; Schedules.** All exhibits and schedules to the Plan are incorporated into and are a part of the Plan as if set forth in full in the Plan. To the extent any

exhibit or schedule is inconsistent with the terms of the Plan, unless otherwise ordered by the Court, the non-exhibit or non-schedule portion of the Plan will control.

The undersigned, on behalf of Debtors, submits and agrees to be bound by the terms of the Plan.

Date: December 18, 2009                    ENNIS HOMES, INC.


                                          By /s/ Brian G. Ennis
                                             BRIAN G. ENNIS, President

Date: December 18, 2009                    ENNIS LAND DEVELOPMENT, INC.


                                          By /s/ Brian G. Ennis
                                             BRIAN G. ENNIS, President


**APPROVED:**

   KLEIN, DeNATALE, GOLDNER,
COOPER, ROSENLIEB & KIMBALL, LLP


By        /s/ T. Scott Belden
  HAGOP T. BEDOYAN
  T. SCOTT BELDEN
  JACOB L. EATON
  Attorneys for Debtors-in-Possession