6

HAGOP T. BEDOYAN, CSB NO. 131285
T. SCOTT BELDEN, CSB NO. 184387
JACOB L. EATON, CSB NO. 244834
KLEIN, DENATALE, GOLDNER,
  COOPER, ROSENLIEB & KIMBALL, LLP
5260 N. Palm Avenue, Suite 217
Fresno, California 93704
Telephone: (559) 438-4374
Facsimile: (559) 432-1847

Attorneys for Debtors-in-Possession

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| In re:<br><br>ENNIS HOMES, INC.,<br><br>Debtor-in-Possession. | Case No. 09-10848-A-11<br>*Substantively Consolidated with case no. 09-16750-A-11*<br><br>Chapter 11<br><br>DC No. KDG-48<br><br>**Preliminary Hearing**<br>Date: April 2, 2010<br>Time: 11:00 a.m.<br>Place: U.S. Bankruptcy Court<br>2500 Tulare Street, Fifth Floor<br>Department A, Courtroom 11<br>Fresno, California<br>Judge: Honorable Whitney Rimel |
|---|---|

**MOTION BY DEBTOR FOR ORDER AUTHORIZING DEBTOR
TO BORROW MONEY FROM BANK OF AMERICA AND GRANTING
SUPERPRIORITY STATUS ON PROPERTY**

The *Motion by Debtor for Order Authorizing Debtor to Borrow Money from Bank of America and Granting Superpriority Status on Property* filed by Ennis Homes, Inc ("Debtor") represents as follows:

1. Ennis Homes, Inc. ("EH") filed a Voluntary Petition under Chapter 11 on February 2, 2009. Ennis Land Development, Inc. ("ELD") filed a Voluntary Petition under
30F6875     1     MOTION BY DEBTORS FOR ORDER AUTHORIZING
                  DEBTORS TO BORROW MONEY FROM BANK OF AMERICA

Chapter 11 on July 17, 2009. EH and ELD were substantively consolidated on January 25, 2010.

2. There is no Chapter 11 Trustees in this case and, therefore, the Debtor is also the Debtor-in-Possession.

3. Debtor intends to continue the residential development business of EH and ELD and confirm a Plan of Reorganization in the above-referenced case. A hearing on confirmation of the *First Amended Plan of Reorganization* ("the Plan") is set for April 2, 2010, and the financing contemplated by this Motion and the continued development of projects are integral parts of Debtor's First Amended Plan of Reorganization.

4. Debtor does not have sufficient money to pay the necessary construction costs to develop and sell its projects that are subject to Deeds of Trust in favor of Bank of America ("BofA"), including the Cottonwood Estates Phase I Project, Eagle Glen Phases 4 & 5 Projects, the Eagle Ranch Phases 3 and 6 Project, the Madison Crossings Project, the Sterling Oaks Phase I Project and the Arbor Park Models Project.[1] Debtor has prepared budgets that reflect the actual and necessary expenses Debtor will incur while developing these projects and such budgets and income and expense projections are reflected in Debtor's First Amended Disclosure Statement on file with the Court and previously provided to creditors.

5. Debtor is seeking authorization to borrow money from BofA through the Motion to meet its developing and operating expenses for the Tranche A Projects and refinance certain other projects including the Cottonwood Estates 2, 3, & 4 Prjoect and the Quail Creek Project.[2] BofA has agreed to provide loans totaling $37,987,715 to Debtor to refinance its existing indebtedness and finance the development of the Tranche A Projects. For purposes of these loans, such residential projects have been divided into two groups: Tranche A Projects and Tranche B Projects. The composition of the loans for these projects is as follows:

///

---

[1] Individually, the definitions in the listed projects are contained in the attached Credit Agreement. Collectively, they will be referred to as the "Tranche A Projects."
[2] Individually, the definitions in the listed projects are contained in the attached Credit Agreement. Collectively, they will be referred to as the "Tranche B Projects."

    **a. Tranche A Loans**

        1. The confirmation of an existing term loan for the sum of $5,200,000.00.

        2. A revolving construction loan totaling $12,210,331.00 consisting of an amount currently outstanding of $2,609,896.51, with additional funds of $9,600,434.49 made available for borrowing, of which $2,000,000.00 will be made immediately available upon entry of an Interim Order on this motion and the remainder at the time of the Final Order.

    **b. Tranche B Loan**

        1. The confirmation and refinance of an existing loan for the sum of $20,577,384.00.

The loans will be subject to (a) interest at the rate of prime plus 3.0% plus a 2% facility fee per annum for all Tranche A loans and (b) interest at the rate of prime plus 1.5% per annum for the Tranche B loan. All indebtedness will be due and payable one year from the closing date. However, there is an allowance for extension of the loan for one year provided that certain conditions are met.

    6. The money will be provided by BofA to Debtor once Debtor has obtained Court approval to (a) borrow the funds; (b) grant BofA a first-priority priming lien on BofA's existing collateral as more fully described in the Credit Agreement (the "Collateral"); (c) grant BofA a super-priority administrative claim for the loans made under the Credit Agreement; and (d) allowing BofA to replace all outstanding pre-petition lines of credit with lines of credit under the instant financing agreement. The money loaned to Debtor will be used to pay Debtor's construction expenses for the completion of the Tranche A Projects. Upon repayment by the Debtor of the "Release Price" for the project, BofA will reconvey and release its lien on such project (or a portion thereof, as applicable). For Tranche A Projects, the "Release Price" means (1) the net sales proceeds, but not less than 85% of gross sales proceeds for completed units as of the effective date of the Credit Agreement; (2) the greater or 85% of net sales

proceeds or par value for uncompleted units as of the effective date of the credit agreement; or (3) the greater of 90% of the gross sales price less Debtor's overhead or net sales proceeds less debtor's overhead for any bulk sale. For Tranche B Projects, the "Release Price" means the greater of 90% of the gross sales price less the debtor's overhead or net sales proceeds less the Debtor's overhead. **This is a summary only. Further details of the loan can be found in the Credit Agreement attached as Exhibit "A" to the Exhibits of this Motion.**

7. Presently, BofA holds the only valid consensual liens against the Tranche A Projects and the Tranche B Projects and such liens are valid, first position liens against the Tranche A Projects and Tranche B Projects. There may be mechanic's liens asserted against the Tranche A Projects and Tranche B Projects which are more fully described in Exhibit "B." This Motion seeks an order ensuring and confirming BofA's first position lien notwithstanding the existence of these junior mechanic's lien claims.

8. Based upon their budget, Debtor believes that if allowed to borrow money from BofA it will have the funds necessary to operate and facilitate the completion of the Tranche A Projects.

9. The terms under which Debtor is seeking approval to borrow funds from BofA are reasonable because (a) the interest rate is acceptable based on the financial circumstances of Debtor, (b) Debtor will be able to make payments to BofA including the Release Prices from the operation of Debtor' residential development business and sales of finished homes or projects, and (c) Debtor will be able to continue their operations for the benefit of all its creditors if it is permitted to borrow the funds from BofA.

10. There will be great prejudice to Debtor and Debtor's creditors if the Motion is denied because Debtor will have insufficient funds to operate, generate a profit, and repay their creditors pursuant to a Plan of Reorganization.

11. 11 U.S.C. § 364(c)(1) provides that:

> (c) If the trustee is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt--(1) with priority over any or all

administrative expenses of the kind specified in section 503(b) or 507(b) of this title;

10. 11 U.S.C §364(d)(1) further provides that:

(1) The court after notice and hearing, may authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien on property of the estate that is subject to a lien only if (A) the trustee is unable to obtain such credit otherwise; and (B) there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior of equal lien is proposed to be granted.

See also Federal Rule of Bankruptcy Procedure Rule 4001(c).

Further, there are times when a lender may require the further assurance of obtaining additional security on prepetition loans as a requisite for providing financing. Such security may be the difference between an ongoing business enterprise and a company in liquidation. *In re Adam's Apple* (9th Cir. 1987) 829 F.2d 1484, 1490. BofA's provision of addition revolving credit is dependant upon obtaining first priority priming lien for all Collateral secured by the Credit Agreement. BofA is not priming any consensual liens. Rather, it is making further advances on existing liens and any mechanic's liens ultimately determined to be valid, are being adequately protected by virtue of the completion of construction and payment of construction costs, including existing construction costs, from the sale of such properties. If the financing was not approved, the likely result would be foreclosure on the properties and elimination of the mechanic's lien holders liens.

11. There will be sufficient proceeds from the sales of residential homes to repay BofA, contribute to the required payments to Debtor's real property secured lenders, and generate a profit to fund Debtor's Plan of Reorganization. Debtor believes that if able to continue to develop residential property, it will generate substantial revenues, repay its loans, and make payments to creditors.

12. Debtor has exhaustively sought financing for its business operations on the best terms possible and has extensively negotiated this loan for several months. Debtor has been unable to obtain funding through means other than the loan from BofA under the terms and conditions of the Credit Agreement.

WHEREFORE, Debtor prays that the Court make and enter its order:

1. Granting the *Motion by Debtor for Order Authorizing Debtor to Borrow Money from Bank of America and Granting Superpriority Status on Property*;
2. Authorizing Debtor to borrow $37,987,715.00 from BofA on the terms and conditions set forth in this Motion and the Ennis Declaration;
3. Granting a first priority priming security interest against BofA's existing collateral notwithstanding the existence of other liens;
4. Granting BofA a super-priority claim as set forth in the Credit Agreement;
5. Authorizing Debtor to execute such documents as are required by BofA to obtain the loan on the terms and conditions set forth in the Motion, including the Credit Agreement and the documents specified in section 4.1 of the Credit Agreement;
6. Approving the immediate borrowing of $2,000,000 pursuant to an Interim Order;
7. Waiving any stay of the Order Authorizing Debtor to Borrow Money under 11 U.S.C. §364(e);
8. Scheduling a Final Hearing; and
9. The granting of such other and further relief to Debtor as the Court may deem appropriate.

Date: March 25, 2010

KLEIN, DeNATALE, GOLDNER,
COOPER, ROSENLIEB & KIMBALL, LLP

By _____
HAGOP BEDOYAN
T. SCOTT BELDEN
JACOB L. EATON
Attorneys for Debtor-in-Possession